# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

DAMIAN RICKETTS,                                  :
                                                 :        Civ. No. 13-0308 (WJM)
                         Petitioner,             :
                                                 :
         v.                                      :        **OPINION**
                                                 :
                                                 :
ERIC HOLDER, Jr., et al.,                        :
                                                 :
                         Respondents.            :
_____            :

**WILLIAM J. MARTINI, U.S.D.J.**

## I.    INTRODUCTION

Petitioner, Damian Ricketts, is currently detained at the Hudson County Correctional

Center in Kearny, New Jersey.  He is a native and citizen of Jamaica, and filed a *pro se* petition

for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The sole proper respondent in this action

is Oscar Aviles, warden at Hudson County Correctional Center.[1]  Petitioner challenges the pre-

removal period of time he has been in the custody of the United States Department of Homeland

Security ("DHS").  (*See* Pet. at p. 1.)  For the following reasons, the Court will deny the petition

without prejudice.

---

[1] On April 11, 2013, petitioner was transferred from the Essex County Correctional Facility to
Hudson County Correctional Center.  Accordingly, the correct respondent is Oscar Aviles, who
is the warden where petitioner is currently confined.  The Clerk will be ordered to replace Roy L.
Hendricks, who is the warden of the Essex County Correctional Facility, with Oscar Aviles as
the proper respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the
Government moves a habeas petition after she properly files a petition naming her immediate
custodian, the District Court retains jurisdiction and may direct the writ to any respondent within
its jurisdiction who has legal authority to effectuate the prisoner's release.").  Petitioner also
names Eric Holder, Jr., Janet Napolitano and John Tsoukaris as respondents in this action.
However, as custodian of petitioner, Aviles is the proper respondent, *see id.* at 435, and these
three respondents shall be dismissed from this action with prejudice.

## II. BACKGROUND

Petitioner entered the United States as a lawful permanent resident on August 16, 1990. (*See* Resp. Ex. 1.) Since his entry into the United States, plaintiff has had a number of arrests and convictions. In July of 2003, petitioner was arrested for shoplifting and convicted in the Municipal Court of the City of Elizabeth. (*See id.* Ex. 2.) In December 2006, petitioner was arrested and pled guilty to petit larceny in the Criminal Court of the City of New York. (*See id.* Ex. 3.) Petitioner was also arrested for engaging in prostitution and convicted in the Newark Municipal Court in December 2006. (*See id.* Ex. 4.) In August 2007, petitioner was again arrested for engaging in prostitution and convicted in the Newark Municipal Court. (*See id.* Ex. 5.) In August 2008, plaintiff pled guilty in the Criminal Court of the City of New York to public lewdness. (*See id.* Ex. 6.) In November 2010, petitioner pled guilty to aggravated assault with bodily injury in the Superior Court of New Jersey, Essex County. (*See id.* Ex. 7.)

Plaintiff subsequently faced charges of burglary and receiving stolen property in the Pennsylvania Court of Common Pleas, Delaware County, arising from an arrest in November 2011. (*See id.* Ex. 8.). On January 13, 2012, the United States Immigration Customs Enforcement issued an immigration detainer to the Delaware County Jail for the petitioner. (*See id.* Ex. 11.) The retainer requested that the Delaware County Jail maintain custody of petitioner for up to forty-eight hours beyond the time he would have been released to allow DHS to take custody of petitioner. (*See id.*)

Petitioner ultimately was convicted of receiving stolen property in the Court of Common Pleas, Delaware County, and received three years probation on Mach 14, 2012. (*See id.* at p. 20.) Despite this probation sentence, it appears as if plaintiff remained incarcerated. Indeed, according to plaintiff, "[o]n April 4, 2012 [he] was transferred to Hudson County

Correctional Facility to appear before a judge for an unanswered criminal complaint that ended up being dismissed." (*See* Dkt. No. 8 at p. 2.) Subsequently, on May 8, 2012, petitioner states that he was transferred to the Essex County Correctional Facility for violating his probation. (*See id.* at p. 2-3.)

On December 12, 2012, DHS served a notice to appear on petitioner, charging him with removal pursuant to Section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(ii), as petitioner had been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal conduct. (*See* Resp. Ex. 1.) A warrant for petitioner's arrest was also issued by DHS on December 12, 2012. (*See id.* Ex. 12.) Additionally, on December 12, 2012, plaintiff acknowledged receipt of being notified by DHS that he was being detained by DHS, pending a final determination by the immigration judge. (*See id.* at p. 7.)

Counsel appeared on petitioner's behalf at removal proceedings before the Immigration Judge on January 23, 2013. (*See id.* Ex. 16.) Plaintiff's next hearing before the Immigration Judge was scheduled for May 2, 2013. (*See id.* Ex. 17.)

### III.    JURISDICTION

Pursuant to 28 U.S.C. § 2241(c)(3), habeas jurisdiction "shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States." A federal court has subject matter jurisdiction under § 2241(c)(3) if: (1) the petitioner is "in custody," and (2) the custody is in violation of the Constitution or treaties of the United States. *See id.* This Court has jurisdiction over the petition as plaintiff was detained within its jurisdiction at the time he filed the petition, *see Spencer v. Kemma*, 523 U.S. 1, 7 (1998), and because he asserts that his continued detainment violates the Constitution. (*See* Pet. at p. 5-6.)

# IV. ANALYSIS

Petitioner contends that his indefinite detention during his removal proceedings violates the Constitution. He specifically cites to Due Process Clause of the Fifth Amendment[2] and the United States Supreme Court decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), to support his arguments that he has been detained for an unreasonable period of time.

## A. Custody by DHS

Before reaching the merits of plaintiff's arguments, the parties dispute when petitioner entered into DHS custody. Petitioner claims that he has been in DHS custody since April 2, 2012. (*See* Pet. at p. 2.) Respondents claim that petitioner has been in their custody since December 12, 2012. (*See* Resp. at p. 9 ("As of the time that this Opposition and Answer is being filed, the Petitioner has been in ICE custody for four months.").) The court agrees with respondents that petitioner has been in their custody since December 12, 2012. Indeed, plaintiff admits that on April 4, 2012, he was transferred to the Hudson County Correctional Facility to appear before a judge on an unanswered criminal complaint, but that he was subsequently transferred to Essex County Correctional Facility in May 2012 for violating his probation. (*See* Dkt. No. 8 at p. 2-3.) Accordingly, based on plaintiff's own representations, he would not have been in DHS custody, but would have been in state custody for violating his probation at or around the time that he claims he was in DHS custody. The court further notes that DHS's arrest warrant and notice to appear against petitioner are dated December 12, 2012. Furthermore, plaintiff was advised on December 12, 2012, that he was being detained by DHS. (*See* Resp. Ex. 13.) Accordingly, the Court finds that petitioner has been in DHS custody since December 12, 2012.

---

[2] The Due Process Clause of the Fifth Amendment provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V.

B.  Relevant Statutes

The relevant statutory authority to detain an alien depends on where the alien is in the removal process.  Section 1226 governs a pre-removal period detention claim.  Section 1226(c) provides for the detention of specified criminal aliens during removal proceedings, provided the detention does not continue for a prolonged period of time.  *See* 8 U.S.C. § 1226(c); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 232 (3d Cir. 2011) ("At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community.").  Section 1231(a)(2) mandates detention during the removal period established in Section 1231(a)(1)(B).  It specifically states that "[d]uring the removal period, the Attorney General shall detain the alien."  8 U.S.C. § 1231(a)(2).  Under 8 U.S.C. § 1231(a)(1)(B), the removal period begins at the latest of several events.  Specifically, the statute states that:

> The removal period begins on the latest of the following:
>
> (i)     The date the order of removal becomes administratively final.
> (ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

C.  Pre-removal Period

In this case, it is unclear whether petitioner's removal period has begun.  As previously stated, a hearing was scheduled before the Immigration Judge on May 2, 2013.  However, neither

party has informed the court of the outcome of that proceeding.[3]  Accordingly, this Court will

first proceed as if petitioner's removal period has not begun as the record does not indicate that a

removal order has been issued.  Under such circumstances, the issue becomes whether

petitioner's pre-removal detention since December 12, 2012, is an unreasonable length of time.

In *Diop*, the Third Circuit held that "§ 1226(c) contains an implicit limitation of

reasonableness:  the statute authorizes only mandatory detention that is reasonable in length . . . .

Should the length of [an alien's] detention become unreasonable, the Government must justify its

continued authority to detain him at a hearing at which it bears the burden of proof."  656 F.3d at

235.  The Third Circuit found that Diop's pre-removal detention period of thirty-five months was

unreasonable in length.  *See id.*; *see also Leslie v. Attorney Gen. of United States*, 678 F.3d 265,

271 (3d Cir. 2012) (holding that four-year detention is unreasonably long).

Since *Diop*, courts have analyzed what is considered reasonable for a pre-removal

detention period to varying conclusions.  *See Pierre v. Sabol*, Civ. No. 11-2184, 2012 WL

1658293, at *4 (M.D. Pa. May 11, 2012) (concluding that twenty months is a prolonged period

of detention); *Gupta v. Sabol*, Civ. No. 11-1081, 2011 WL 3897964, at *3 (M.D. Pa. Sept. 6,

2011) (period of pre-removal detention approaching twenty months is prolonged and

unreasonable); *but see Kot v. Elwood*, Civ. No. 12-1720, 2012 WL 1565438, at *3 (D.N.J. May

2, 2012) (finding that nine-month pre-removal detention period was not prolonged under *Diop*);

*Bete v. Holder*, Civ. No. 11-6405, 2012 WL 1067747, at *8 (D.N.J. Mar. 29, 2012) (finding that

twelve month pre-removal detention period was not unreasonable).  Based on the relevant case

law cited above, it appears as if a period of twelve months or less of  pre-removal detention

would not necessarily be considered prolonged and unreasonable under *Diop*.  *See id.*

---

[3] The Court notes that petitioner remains in DHS custody.  *See* https://locator.ice.gov/odls/
searchByName.do (last visited June 7, 2013).

In this case, petitioner's pre-removal detention period is approximately seven months. The Court finds that this period of time is not unreasonable. *See Kot*, 2012 WL 1565438, at \*3; *Bete*, 2012 WL 1067747, at \*8. The removal proceedings are progressing and seven months is not a prolonged unreasonable period of time under *Diop*. Petitioner's period of pre-removal detention is far less than the thirty-five months and four years the detainees faced in *Diop* and *Leslie*, respectively. Indeed, it is even far less than the twenty months that was found to be prolonged and unreasonable in *Pierre* and *Gupta*. Petitioner's seven months of pre-removal detention is more analogous to what detainees faced in *Kot* and *Bete*. Habeas relief is not warranted under such circumstances.

D. Possible Post-Removal Detention Period

As discussed above, the record is incomplete as to the status of petitioner's underlying removal proceedings. Nevertheless, even if this Court were to assume *arguendo* that petitioner was ordered removed by the Immigration Judge on May 2, 2013, it would not change the outcome of these proceedings.

For purposes of this analysis, the earliest that the Immigration Judge would have ordered petitioner removed was at the hearing on May 2, 2013. Assuming that petitioner did not file an appeal to the Board of Immigration Appeals, his order of removal would have become final thirty days thereafter, or on June 1, 2013. *See* 8 U.S.C. § 1101(a)(47)(B) ("The order described under subparagraph (a) shall become final upon the earlier of – (i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals."); 8 C.F.R. § 1240.15 (stating that an appeal from a decision of an immigration judge to the Board of Immigration Appeals "shall be filed within 30 calendar days after the mailing of the written

decision, the state of an oral decision, or the service of a summary decision"). Once an alien's

order of removal is "final,' the Attorney General is required to remove him from the United

States within a ninety-day removal period. *See* 8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise

provided in this section, when an alien is ordered removed, the Attorney General shall remove

the alien from the United States within a period of 90 days."). This ninety-day period begins on

the latest of the following:

> (i)   The date the order of removal became administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention.

8 U.S.C. § 1231(a)(1)(B). Section 1231(a)(2) requires DHS to detain aliens during this ninety-

day removal period. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period the Attorney

General shall detain the alien."). However, if DHS does not remove the alien during the this 90-

day removal period, then § 1231(a)(6) authorizes DHS to thereafter release the alien on bond or

continue to detain the alien. Specifically, § 1231(a)(6) provides that:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6). In *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001), the Supreme Court

stated that Section 1231(a)(6) does not authorize the Attorney General to detain aliens

indefinitely beyond the removal period, but "limits an alien's post-removal-period detention to a

period reasonably necessary to bring about that alien's removal from the United States." The

Supreme Court recognized that six months is a presumptively reasonable period of post-removal detention under § 1231(a)(6). *See id.* at 701.

In this case, the earliest possible date when petitioner's removal could have become administratively final (if at all), was on June 1, 2013. Accordingly, even if petitioner has now been ordered removed, he would still be within the ninety-day period where the Attorney General has the right to detain him. *See* 8 U.S.C. § 1231(a)(2). Furthermore, the six-month presumptively reasonable period of post-removal detention under *Zadvydas* has not expired. Therefore, any claim under *Zadvydas* would be premature. Under such circumstances, the petition would be dismissed without prejudice. *See Cole v. Elwood*, Civ. No. 13-1538, 2013 WL 1987258, at \*7 (D.N.J. May 13, 2013) (dismissing without prejudice a prematurely filed habeas petition where six-month presumptively reasonable removal period under *Zadvydas* had not expired); *Abdou v. Elwood*, Civ. No. 12-7720, 2013 WL 1405774, at \*4 (D.N.J. Apr. 4, 2013) (same); *Salavarria v. Gonzales*, Civ. No. 06-4779, 2007 WL 1185983, at \*2 (D.N.J. Apr. 20, 2007) (dismissing without prejudice habeas petition where habeas petition was filed less than six months after the beginning of the removal period).

Accordingly, whether Petitioner is currently detained pre- or post-removal, his petition must be dismissed. Petitioner's pre-removal detention period has not been unreasonable. Furthermore, even if petitioner has now been ordered removed, any potential post-removal detention period petitioner has endured is presumptively reasonable.

## V.     CONCLUSION

For the foregoing reasons, the habeas petition will be dismissed without prejudice.  An appropriate order will be entered.



DATED: 6/12/13                                    s/William J. Martini

                                                  _____
                                                        WILLIAM J. MARTINI
                                                        United States District Judge